[Cite as *Singh v. Guru Gobind Singh Sikh Soc. of Cleveland*, 2014-Ohio-4844.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101299**

**KULDEEP SINGH, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**GURU GOBIND SINGH SIKH, ETC., ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-772212

**BEFORE:** McCormack, J., Celebrezze, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 30, 2014

**ATTORNEY FOR APPELLANTS**

Richard O. Mazanec
1422 Euclid Avenue
Suite 500
Cleveland, OH 44115


**ATTORNEY FOR APPELLEES**

Joseph A. Dubyak
Dubyak & Goldense
50 Public Square
Suite 920
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1}   This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.   Plaintiffs-appellants, Kuldeep Singh, et al. ("the members"), appeal the decision of the trial court denying their motion for summary judgment and granting summary judgment in favor of defendants-appellees, Guru Gobind Singh Sikh Society of Cleveland ("GGSSS" or "the Society") and its Executive Committee ("the Executive Committee").   For the reasons that follow, we reverse.

### Procedural History and Substantive Facts

{¶2}   GGSSS is an Ohio non-profit organization dedicated to promoting the practice and beliefs of the Sikh religion.   The Executive Committee consists of members of the Society serving in their capacity as officers.   Plaintiffs-appellants are members of the Society in good standing who opposed the proposal and subsequent adoption of certain amendments to the Society's constitution.

{¶3}   On November 25, 2011, the Society's Executive Committee sent notification to its members of an upcoming general body meeting to be held on December 11, 2011, at 1:00 p.m. The correspondence provided an agenda for the meeting, and it included a copy of the Society's proposed amended constitution.   The correspondence also provided that secret ballot voting on the amended constitution would be available from 9:00 a.m. until 4:00 p.m.

{¶4}   In response to this notice, the members requested that the Executive Committee delay the vote on the proposed amendments until after the general body meeting.   The members sought to provide the full membership an opportunity to discuss the proposed amendments during the general meeting.   According to the members, the voting proceeded instead at 9:00 a.m. that morning, against their stated wishes.   When the members voiced their objections at the

general body meeting, they were advised that the amended constitution had passed by the membership vote.

**{¶5}** On December 27, 2011, the Society's members filed a complaint for declaratory judgment against the Society and its Executive Committee. In their complaint, the members sought a declaration that the constitution of the Society purportedly ratified on December 11, 2011, is invalid due to alleged constitutional defects regarding notice of the proposed amendments to members of the Society, the scheduled ratification meeting, and the voting process. On July 19, 2012, the trial court issued a judgment entry ordering that "all future meetings, elections, voting and other operational actions of the Executive Committee shall strictly be pursuant to the constitution existing at the time of said actions."[1]

**{¶6}** On October 10, 2013, the members moved for summary judgment on their complaint, to which the Society responded with its own motion for summary judgment. The Society argued that the procedures outlined in the constitution substantially complied with Article XI of the Society's constitution as it existed at the time of the vote, the voting procedure was more secure and protective of the vote than outlined in the constitution, and the proposed amendments contained relatively minor changes that did not affect the rights of the members. Agreeing with the Society, the trial court denied the members' motion for summary judgment and granted the Society's motion for summary judgment.

**Assignments of Error**

---

[1] The Society's members appealed the trial court's decision to this court, which dismissed the appeal for lack of a final appealable order. *See Singh v. Guru Gobind Singh Sikh Soc. of Cleveland*, 8th Dist. Cuyahoga No. 98810 (Jan. 18, 2013).

I.   The trial court erred as a matter of law and violated its own order by granting the defendants' motion for summary judgment and by declaring that the 2011 amended Constitution was valid.

II.   The trial court abused its discretion in denying the plaintiffs' motion for summary judgment and granting the defendants' motion for summary judgment declaring that the adoption of the 2011 amended Constitution "substantially" complied with the ratification procedure and that the new amendments "did not affect the rights of the members."

## Summary Judgment

**{¶7}**   We first note that, contrary to the members' assertion in its second assignment of error, we do not review the trial court's decision on summary judgment for an abuse of discretion.   Rather, we review an appeal from summary judgment under a de novo standard, using the same standard that the trial court applies under Civ.R. 56(C).   *Secy. of Veterans Affairs v. Anderson*, 8th Dist. Cuyahoga No. 99957, 2014-Ohio-3493, ¶ 20, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   To that end, summary judgment is proper when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.   Civ.R. 56(C).

**{¶8}**   We will address the assignments of error together.

## Law and Analysis

**{¶9}**   It is apparent from their extensive involvement in the GGSSS that both the members and the Society seek that which is best for their organization, spiritually and otherwise.  In this appeal, we are not called upon, nor do we   address, the Society's religious tenets.   It is

well established that civil courts do not possess jurisdiction to review purely ecclesiastical or spiritual disputes of religious organizations. *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 40, 637 N.E.2d 397 (8th Dist.1994), citing *Watson v. Jones*, 80 U.S. 679, 706, 20 L.Ed. 666 (1871).

{¶10} The Society and its members in this case are not disputing doctrine or religion. Rather, the dispute concerns the interpretation of the Society's own governing constitution. A religious organization is governed by "whatever constitution, rules, and processes it has put in place for itself." *Calvary Congregational Church, Inc. v. Eppinger*, 8th Dist. Cuyahoga No. 75011, 2000 Ohio App. LEXIS 578, * 3 (Feb. 17, 2000). The religious organization, however, is not granted the "'unbridled right to disregard and to violate the provisions of [its] own written by-laws or constitutions.'" *Id.*, quoting *Randolph v. First Baptist Church of Lockland*, 53 Ohio Op. 288, 68 Ohio L.Abs. 100, 120 N.E.2d 485 (1954). Therefore, where the non-doctrinal dispute involves a matter of determining whether the Society's own mandated procedures were followed, such as voting procedures and membership provisions, this court has proper jurisdiction. *See Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348, 773 N.E.2d 605 (12th Dist.).

{¶11} Here, the members argued that the trial court erred when it denied their motion for summary judgment and granted the Society's motion for summary judgment. The members assert that the constitution purportedly ratified on December 11, 2011, was invalid due to constitutional defects. The members claim that the notice of the proposed amendments violated the constitution of the Society because it did not include a copy of the original constitution to allow the membership to compare the existing constitution to the proposed changes. They also claim that the voting process was deficient in that the voting had begun four hours prior to the

general body meeting and the process did not allow for discussion of the proposed amendments at the meeting.

{¶12} Article XI of the 1992 GGSSS constitution (the "original" constitution), entitled "Amendments," provides as follows:

> Section 1 — These bylaws can be amended by a 3/4th majority of the voting members of the General Body present and voting at the General Body Meeting after written notice two weeks embodying such amendments has been given to members. Amendments shall be proposed to the President of the Executive Committee.

> Section 2 — All amendments received shall first be reviewed by the Executive Committee and then brought before the General Body for final approval except Article III, Section 2, Founding Members, which cannot be amended.

{¶13} On December 2, 2007, certain proposed amendments to the original constitution were ratified and approved by the membership. As amended, Section 1 of the 2007 constitution changed the membership majority necessary to pass amendments from 3/4th majority to 2/3rd majority. The amendment to Section 1 also included an additional paragraph regarding discussion of proposed amendments by a Constitution Committee and the requirement of a "final draft":

> All amendments shall be thoroughly discussed in a Constitution Committee which shall be nominated by General Body in June or December GB meeting. The [Executive Committee] Board and [Constitution Committee] shall prepare a final draft to present to the General Body in a [General Body Meeting] with two weeks written notice to all membership. This draft shall be mailed to all members.

{¶14} Although the members concede, and the evidence shows, that the Society provided timely written notice of the general body meeting and a copy of the proposed amended

constitution in accordance with Article XI, they contend that the Society failed to provide a copy of the original constitution along with its 2007 amendments or identify how the proposed amendments would change the existing constitution. We do not find, however, that the constitution mandates that a copy of the existing constitution be served upon the membership with its notice and proposed amendments. Rather, Section 1 provides only that two weeks notice "embodying such amendments" be given to the members. And Section 1, as amended, states that proposed amendments must be "thoroughly discussed," the notice must include a "final draft," and that draft "shall be mailed to all members." Nowhere in the section entitled "Amendments" does the constitution mandate that the existing constitution be included in the notice of proposed amendments or that the Society separately identify the proposed amendments. Therefore, because the Society provided its members with timely notice and a copy of the proposed amended constitution, it complied with Article XI of the GGSSS constitution with respect to notice.

{¶15} The members further claim that the Society violated the constitutionally mandated voting process by allowing the voting on the proposed amendments to begin at 9:00 a.m., four hours before the general body meeting began. We agree. As outlined above, Article XI, Section 1, as amended, provides that the bylaws may be amended by a 2/3rd majority "of the voting members of the General Body *present and voting at the General Body Meeting*." This statement contains a temporal aspect that requires the vote to take place in the context of the general body meeting, which was scheduled and held at 1:00 p.m. Thus, an amendment is only valid if a sufficient majority of those members present and voting at the general body meeting approve it. Here, the Society permitted the vote to begin four hours before the general body meeting and to continue after the conclusion of the meeting. Therefore, in allowing the voting

to occur prior to the start of the meeting, as well as after the meeting had ended, the Society violated this constitutional mandate.

{¶16} Finally, the members allege that the trial court erred in finding that the proposed amendments contained "relatively minor changes" to the constitution "that did not affect the rights of the members." In support of their argument, the members refer to the proposed amendment to Article III, wherein Section 2, Number 3, "Responsibilities of Founding Members," is completely deleted. Seemingly in its place, the members contend, is the newly proposed "Board of Panelists." They argue that such a proposal strips the founding members of their responsibilities established under the constitution and therefore violates the constitutional prohibition against such action.[2]

{¶17} As outlined above, Article XI, Section 2, of the original constitution provides that all amendments shall be brought before the general body for final approval "except Article III, Section 2, Founding Members, which cannot be amended." Article III, Section 2, includes three subsections: (1) Membership Dues, (2) Founding Members, and (3) Responsibilities of Founding Members.

{¶18} "Founding Members" are defined as

---

[2] In 2008, certain members of GGSSS filed a similar complaint for declaratory judgment against the Society in *Chauhan v. Guru Gobind Singh Sikh Soc. of Cleveland*, Cuyahoga C.P. No. 08 CV 674510 (May 2009) when the Society and its Executive Committee attempted to amend its constitution in existence at the time (the original 1992 constitution and 2007 amendments). The members in 2008 claimed that the proposed amended constitution was invalid due to the Society and its Executive Committee's non-compliance with the constitutional requirements for amendments. The court agreed with the members and specifically found that the Society's attempt to delete its founding members from the constitution absent unanimous approval was invalid because the amendment process did not comport with the constitutional mandates of the original constitution and its 2007 amendments.

those families who have actively participated to organize the new society from inception * * * and are fully responsible to run this organization smoothly. The founding members, their children and future spouse's membership is life long and non-cancelable. * * * No amendments, additions, or deletions can be made to change this membership. The code of ethics also applies to this membership.

{¶19} "Responsibilities of Founding Members" are listed as follows:

a.      Shall be fully responsible to oversee the function of the body.

b.      Shall be expected to serve on any committee if requested any time.

c.      Shall be financially responsible for the Society.

d.      Shall be responsible for upkeep of the Gurudwara, and safeguard the assets of the Society.

e.      Shall be responsible for major policy and long term planning for the Society.

{¶20} Upon review of the 2011 proposed amended constitution, we note several major changes to the original constitution and its 2007 amendments:

1.      The subsection "Founding Members" has been omitted from Article III, Section 2;

2.      The subsection "Responsibilities of Founding Members" has been removed from Article III, Section 2;

3.      New Section 5 of Article III provides that if a membership is declined, the applicant's case may be decided with "forty-one [percent] majority of the members present," whereas Section 5 of the original constitution allows for a decision by "fifty-one percent majority *of the Founding Members* present" (Emphasis added.);

4.      New Section 7 of Article III, entitled "Founding Members," adapts the original definition of founding members to refer to the founding members in the past tense and defines them as those who "*were* fully responsible to run this organization smoothly *in the past*" (Emphasis added.);

5.    New Section 2 of Article XI, "Amendments," omits the statement "except Article III, Section 2, Founding Members, which cannot be amended"; and

6.    Article XV, entitled "Board of Panelists," was created "to help plan the affairs, functions of the Gurudwara in [c]oordination with Executive Committee." The article states that the panel's main purpose "will be to help plan the future endeavors/smooth/disciplined running of the Gurudwara as deemed fit/necessary for the Sikh Community." Functions of the panel include fundraising, "future vision for the Community," and "to help plan future special projects for the Sikh Community."

{¶21} As indicated above, the 1992 original constitution, along with its 2007 amendments, provide that the founding members' membership is "life long" and cannot be cancelled. The constitution further provides, in Articles III and XI, that "[n]o amendments, additions, or deletions can be made to change this membership." Our review of the 2011 constitution reveals that several fundamental changes to the founding members' membership were, indeed, incorporated into the proposed new constitution. Significantly, these changes attempted to delete all current responsibilities of the founding members and remove the provision that prohibits amendments to the founding members' membership. Therefore, the Society's attempt in December 2011 to amend or delete the founding members' membership did not comport with the mandates of its constitution in effect at that time.

{¶22} In light of the foregoing, we find that the 2011 constitutional amendments were not adopted according to the procedures outlined and required in the original 1992 constitution. The trial court therefore erred in denying the members' motion for summary judgment and granting the Society's motion for summary judgment. The members' assignments of error are sustained.

{¶23} Judgment reversed, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover of said appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
LARRY A. JONES, SR., J., CONCUR